UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | | |
|---|---|---|
| JOSHUA TAPER, | : | Case No. 1:24-cv-600 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Michael R. Barrett |
| | : | Magistrate Judge Kimberly A. Jolson |
| JENNIFER BRANCH, *et al*., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER AND
REPORT AND RECOMMENDATION**

Plaintiff, an inmate at the Lebanon Correctional Institution (LeCI), has filed a *pro se* civil rights Complaint under 42 U.S.C. §§ 1981, 1982, 1983, 1985, and Ohio state law.  (Doc. 1). Plaintiff names five Defendants, solely in their individual capacities:  Hamilton County Court of Common Pleas Judge Jennifer Branch, LeCI Warden Douglas Luneke, Ohio Department of Rehabilitation and Correction (ODRC) Director Annette Chambers-Smith, Governor Richard Michael DeWine, and Ohio Attorney General David Anthony Yost.  (*Id*. at 2–3, 16).  The Court also understands Plaintiff brings claims against the State of Ohio.  (*Id*. at 12).  By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

This matter is before the Court for a *sua sponte* review of the Complaint to determine whether the Complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.  *See* Prison Litigation Reform Act (PLRA) of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).  Also before the Court are Plaintiff's Motions for Recusal under 28 U.S.C. § 455(a)(b) (Docs. 7, 9, 10); to Change Venue pursuant to

28 U.S.C. § 1404(2)(b)(c) (Docs. 4, 8); and to obtain a Certificate of Appealability (Doc. 14).

For the reasons set forth below, it is **RECOMMENDED** that the Complaint (Doc. 1) be **DISMISSED**. Plaintiff's Motions (Docs. 4, 7, 8, 9, 10, 14) are **DENIED**.

## I.     THE "THREE STRIKES" PROVISION OF THE PLRA

At the outset, the Undersigned notes that Plaintiff is a frequent filer in this Court. Besides this case, he has filed two additional civil rights cases. (*See Taper v. Branch*, *et al.*, No. 1:23-cv-806 (S.D. Ohio) (hereinafter "Civil Rights Case #1"); *Taper v. Tabor et al.*, No. 1:24-cv-159 (S.D. Ohio) (hereinafter "Civil Rights Case #2")). And he has filed two habeas corpus actions. (*Taper v. Warden Lebanon Correctional Institution*, 1:24-cv-00184 (S.D. Ohio) (severed from Civil Rights Case #1) (hereinafter "Habeas Corpus Case #1"); *Taper v. Luneke*, No. 1-24-cv-602 (S.D. Ohio) (hereinafter "Habeas Corpus Case #2")).

As discussed in more detail below, there is considerable overlap between his cases. For example, both Civil Rights Cases #1 and this case assert that Plaintiff should be granted relief, in part, based on the same grounds as those presented in his two habeas petitions. (*Compare* Civil Rights Case #1, Doc. 21 at 16 (asserting when he was originally arrested, Plaintiff was denied a parent or lawyer while he was interrogated by police) *with* Habeas Corpus Case #1, Doc. 29 at 6 (asserting the same); *compare* Doc. 1 at 16 (asserting that absent a proper bindover procedure, the juvenile court has exclusive subject matter jurisdiction over his criminal case) *with* Habeas Corpus Case #2, Doc. 1 at 11 (asserting the same)). And Plaintiff continually asserts that his arrest and subsequent incarceration qualify as "kidnapping." (*See, e.g.*, Doc. 1 at 13; Civil Rights Case #1, Doc. 21 at 16; Habeas Corpus Case #1, Doc. 29 at 6).

Plaintiff's prolificacy does not stop there. Within individual cases, Plaintiff tends to file successive, superfluous, or frivolous motions. (*See, e.g.*, Docs. 7 (motion for recusal), 9 (same),

10 (same); Civil Rights Case #1 (filing twelve "amendments" to evidence, defendants, or claims beyond his operative pleading amendments); Habeas Case #1 (filing thirteen "memorandums in support" of his habeas petition)).  All told, the judicial resources spent screening Plaintiff's civil rights claims and considering his habeas petitions—which have largely been dismissed—is vast. (*But see* Civil Rights Case #2, Doc. 5 (allowing less than half of Plaintiff's fifteen claims to proceed beyond an initial screen)).

Especially considering the tax Plaintiff's filing history puts on this Court, the Undersigned is obliged to consider as a threshold matter whether Plaintiff has accumulated any strikes under the PLRA.  While this Court cannot bind later courts that may consider whether Plaintiff has already accumulated three strikes, the Court can recommend that a case be treated as a strike as defined by 28 U.S.C. § 1915(g).  *See Simons v. Washington*, 996 F.3d 350, 353 (6th Cir. 2021) ("Even if the ruling court may not be able to bind later courts to a strike characterization, it often will make sense for the court that dismisses a prisoner's suit to make a non-binding strike recommendation—sometimes what amounts to a strike warning.").  Prior to examining which of Plaintiff's civil rights cases count as strikes however, a discussion of the Sixth Circuit's recent opinion *Crump v. Blue*, 121 F.4th 1108 (2024), is necessary.

A.    ***Crump*'s Effect on the Three-Strikes Rule**

The Undersigned begins with a brief overview of the PLRA and prisoner litigation. Generally, a filing fee is required to initiate a federal lawsuit.  *See* 28 U.S.C. § 1914(a).  If, however, a litigant cannot afford to pay, a litigant may file a motion for leave to proceed *in forma pauperis*.  *See* 28 U.S.C. § 1915(a)(1).  If granted *in forma pauperis* status, the Court may waive the fee entirely, require only partial payment, or order periodic payments over time.  *Id.*; *see also* 28 U.S.C. § 1915(b)(1)–(4).

But different rules apply to prisoners.  The statute requires that prisoners bringing civil actions pay the filing fee in full, though it can be paid in periodic installments.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 604–08 (6th Cir. 1997) (explaining how filing fees and costs are calculated and assessed for prisoners).  And there is more.  Concerned that the payment structure would not be enough of an impediment against "frivolous and vexatious prisoner litigation," Congress included a three-strikes provision.  *In re Alea*, 286 F.3d 378, 380 (6th Cir. 2002).  The rule provides "that a prisoner may not 'bring a civil action or appeal a judgment' in forma pauperis if the prisoner has three or more times 'brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief can be granted.'"  *Crump*, 121 F.4th at 1110–11 (quoting 28 U.S.C. § 1915(g)).

In the nearly thirty years since its enactment, courts have assessed strikes under the PLRA to prisoners whose complaints were dismissed outright.  *Wilson v. Yaklich*, 148 F.3d 596, 602 (6th Cir. 1998) (noting the PLRA was enacted in 1996)).  This includes complaints encompassing both claims "covered by" the PLRA and claims "not covered by" PLRA—"mixed-claim actions" as the Sixth Circuit has named them.  121 F.4th at 1110; *see, e.g.*, *Coleman v. Tollefson*, 733 F.3d 175, 178 (6th Cir. 2013) (assessing three strikes after successive complaints were dismissed on immunity and pleading standards grounds, and where the courts declined to exercise supplemental jurisdiction over state-law claims); *Boles v. Matthews*, No. 97-5874, 173 F.3d 854 (Table), 1999 WL 183472, at *2 (6th Cir. Mar. 15, 1999) (unpublished table decision) (assessing a third strike where the district court dismissed the complaint for lack of jurisdiction under the *Rooker-Feldman* doctrine); *cf. Simons v. Washington*, 996 F.3d 350, 354 (6th Cir. 2021) (declining to overrule the assessment of a strike where the district court dismissed the prisoner's federal claims on the merits and declined to exercise supplemental jurisdiction over his state-law claims).

4

Then, in 2024, Horace Crump challenged the district court's denial of his *in forma pauperis* request on the basis that he had accumulated three strikes. *Crump*, 121 F.4th at 1110. The Sixth Circuit agreed that two of his previous actions should not be assessed as strikes under the PLRA because they were "mixed-claim" actions. *Id.* at 1110, 1112. The panel explained its logic.

Crump's first challenged strike was assessed in a case where the district court dismissed Crump's federal claims for failure to state a claim. *Id.* at 1112 (citation omitted). The district court concurrently declined to exercise supplemental jurisdiction over his related state-law claims. *Id.* (citation omitted). The Sixth Circuit held this dismissal was not a strike "because the dismissal of Crump's state-law claims falls outside of the three-strikes rule's enumerated grounds, [so] his action does too." *Id.* at 1112. In other words, the fact that the decision was "mixed" was fatal to the strike assessment.

Similarly, Crump's second challenged strike was assessed in a case where some of Crump's federal claims were dismissed for failure to state a claim, while others were barred by Eleventh Amendment sovereign immunity. *Id.* (citation omitted). This, too, was outside the PLRA's strike zone because Eleventh Amendment immunity "does not appear on the list of grounds for a cognizable strike." *Id.* at 1112–13. Put another way, "[a]n Eleventh Amendment dismissal does not necessarily count as frivolous. It does not necessarily count as malicious. And it does not count as a failure to state a claim." *Id.* at 1112 (also noting dismissals under Eleventh Amendment immunity fall under Rule 12(b)(1) purview for "lack of subject-matter jurisdiction," not Rule 12(b)(6)'s "failure to state a claim" language; *see also Jones v. Lineberry*, No. 24-5684, 2025 WL 521313, at *1–2 (6th Cir. Feb. 10, 2025) (holding that complaints dismissed under the *Rooker-Feldman* doctrine or on judicial immunity grounds should not be assessed as strikes). So, again, the "mixed" nature of the dismissal did not allow the lower court to assess a strike. The

Sixth Circuit ultimately remanded the case for further consideration of Crump's *in forma pauperis* status. *Crump*, 121 F.4th at 1115.

All in all, *Crump* stands for the notion that "all claims in a complaint, not just some of them, must be dismissed on grounds listed in the [PLRA] for the dismissal to count as a strike." *Id.* at 1111; *see also Jones*, 2025 WL 521313, at *2 (not assessing strikes where complaints were "dismissed in whole or in part for grounds other than those listed in the PLRA's three-strikes provision."). This holding upends years of strike assessment jurisprudence in the lower courts and reigns in the Sixth Circuit's own strike-related precedent. *Crump*, 121 F.4th at 1113 (citing *Pointer v. Wilkinson*, 502 F.3d 369 (6th Cir. 2007) (assessing a strike where the prisoner's claims were dismissed for failure to exhaust and failure to state a claim)). And litigants now have a strike workaround. As the *Crump* panel acknowledged, prisoners can now add "meritless state-law claims or claims against immune defendants to their federal claims to try to avoid strikes." 121 F.4th at 1114. To avoid this result, the panel advised that "[a] district court facing that situation retains the authority to dismiss such a claim, label the claim as frivolous, and assess a strike." *Id.* at 1114–15.

Practically, however, this approach raises its own problems. For example, more often than not, to label a state-law claim as frivolous, a district court must necessarily reach the claim itself. This is at odds with what district courts have been instructed to do when presented with state-law claims. "The Supreme Court has cautioned that 'a federal court's determination of state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties.'" *Plain Loc. Sch. Dist. Bd. of Educ. v. DeWine*, 486 F.Supp.3d 1173, 1195 (S.D. Ohio 2020) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988)). Therefore, if a district court dismisses a plaintiff's federal claims, "it should not ordinarily reach

the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006); *see also Crump*, 121 F.4th at 1115–16 (Readler, J., concurring) (saying the "traditional 'rule of thumb'" is to decline to adjudicate state-law claims if the federal claims are dismissed before trial). In fact, courts should do so only when judicial economy overwhelmingly "outweigh[s] [the] concern over needlessly deciding state law issues." *Moon*, 465 F.3d at 728 (internal quotation omitted); *see also Province v. Cleveland Press Pub. Co.*, 787 F.2d 1047, 1055 (6th Cir. 1986) (stating only "overwhelming interests in judicial economy" allow courts to decide state-law claims once federal claims are dismissed); *Durant v. Servicemaster Co.*, 109 F. App'x 27, 31 (6th Cir. 2004) (finding the court would have abused its discretion if it exercised supplemental jurisdiction over certain state-law claims). On these principles, it is unlikely that the lower courts pre-*Crump* would have elected to reach state-law claims in a PLRA-complaint if all federal claims were dismissed. But for future cases, as here, *Crump* requires district courts to choose between these competing directives.

Issues of immunity present a similar dilemma. As noted in *Crump*, "[t]here is nothing necessarily frivolous or malicious in bringing an action for which the court lacks jurisdiction." 121 F.4th at 1113 (quoting *Thompson v. DEA*, 492 F.3d 428, 437 (D.C. Cir. 2007)); *see also Cohen v. Corr. Corp. of Am.*, 439 F. App'x 489, 492 (6th Cir. 2011) ("[A] prisoner's invocation of federal jurisdiction in and of itself may be frivolous where there is 'no possible ground upon which a reasoned argument can be made to sustain [ ] jurisdiction.'" (citation omitted)). Yet the concepts of immunity, jurisdiction, and frivolity are not always clear-cut. *See, e.g.*, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (holding a complaint "is frivolous where it lacks an arguable basis either in law or in fact"); *Cohen*, 439 F. App'x at 491–92 (assessing three strikes and finding a complaint was frivolous on appeal, even though the complaint was originally dismissed for lack of

7

jurisdiction); *Carlock v. Williams*, 182 F.3d 916 (Table) (6th Cir. 1999) ("Since there is no basis for federal jurisdiction apparent on the face of Carlock's complaint . . . the district court properly dismissed the action as frivolous and for lack of subject matter jurisdiction."); *compare Jones*, 2025 WL 521313, at *2 (considering a dismissal based on "absolute judicial immunity" and concluding "[a] dismissal based on immunity . . . does not count as a PLRA strike") *with Burnham v. Friedland*, No. 21-3888, 2022 WL 3046966 (6th Cir. Aug. 2, 2022) (Thapar, J., concurring) ("[J]udicial immunity isn't a jurisdictional doctrine; it's an affirmative defense that goes to the merits."). The overlap will likely necessitate circular parsing of past PLRA screens to determine whether a dismissal qualifies as a strike.

What's more, the panel's proposal that the district courts simply label a claim against an immune party as frivolous suggests that lower courts could or should leapfrog over "threshold issues of judicial administration," *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015), like subject-matter jurisdiction, to overcome a "strike proofed" complaint. *See also Rogers v. Stratton Ind., Inc.*, 798 F.2d 913, 917 (6th Cir. 1986) ("[I]f a court does not have jurisdiction, ipso facto, it cannot address the merits of a complaint."). While judicial efficiency may have guided district courts to rest dismissals solely on these threshold issues in the past, now "giving cases more attention at the front end to ensure that strikes are properly awarded" must take priority. *Crump*, 121 F.4th at 1116 (Readler, J., concurring).

Going forward, courts now have the benefit of *Crump*'s guidance. Past opinions avoiding state-law questions or applying immunities, however, cannot be rewritten. Instead, the Court must, as here, reassess those decisions under *Crump*.

### B.     Plaintiff's Assessed Strikes Under *Crump*

Discussed in more detail below, this Court dismissed a similar case filed by Plaintiff, Civil Rights Case #1, which alleged twenty-four state and federal claims against over thirty Defendants. The Court dismissed claims based on *Heck*, failure to state a claim, and misjoinder of unrelated claims. (Civil Rights Case #1, Docs. 54, 62). Judicial, quasi-judicial, and prosecutorial immunity also formed the basis for dismissal of certain claims. (*Id.*). Finally, the Court declined to exercise supplemental jurisdiction over other state-law claims. (*Id.*). In the end, because the Court dismissed claims for reasons beyond the three enumerated in the PLRA strike provision, and because the Court did not label those claims frivolous, the Court cannot now recommend that Civil Rights Case #1 be treated as a strike. *Crump*, 121 F.4th at 1114.

The same is true of Civil Rights Case #2. Because certain claims in that case were allowed to proceed beyond an initial screen, the strike provision of the PLRA does not apply.

With *Crump's* guidance, the Undersigned treats this case differently. As explained below, all of Plaintiff's claims are recommended to be dismissed for failure to state a claim and for frivolousness. These are reasons expressly enumerated in the PLRA strike provision. 28 U.S.C. § 1915(g). Accordingly, the Undersigned **RECOMMENDS** that this dismissal count as a strike under 28 U.S.C. § 1915(g).

## II.     SCREENING OF THE COMPLAINT

Under the PLRA, the Undersigned now screens Plaintiff's Complaint before turning to his other pending motions.

### A.     Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an

economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328–29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton*, 504 U.S. at 32; *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Still, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("[D]ismissal standard articulated in *Iqbal*

and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson*, 551 U.S. at 93 (citations omitted).

## B.    Factual Allegations

Plaintiff's claims (Doc. 1) are largely duplicative of claims that he raised in Civil Rights Case #1.  As mentioned, his claims in that case were dismissed as either barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), or failing to state a claim upon which relief could be granted.  As in the earlier action, Plaintiff challenges his underlying 2015 Hamilton County, Ohio, conviction by guilty plea to reduced charges of involuntary manslaughter with a firearm specification.  (*See generally* Doc. 1).  *See also* https://www.courtclerk.org/records-search/case-number-search/ (containing a copy of the docket in Plaintiff's Hamilton County Common Pleas criminal matter at Case No. B1406354); *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980)

(citation omitted) (stating federal courts may take judicial notice of proceedings in other courts of record). Plaintiff further challenges the denial of his 2023 state-court motion for judicial release. (Doc. 1). His Complaint alleges that six Defendants violated his rights under the United States constitution and state law. (*Id.*).

Plaintiff first claims that he "was kidnapped, abducted and unlawfully detained 10 years ago by the [S]tate of Ohio." (Doc. 1 at 12). More specifically, Plaintiff says that, on September 4, 2014, an unnamed, non-defendant detective took him from high school without his parents' consent, brought him to an interrogation room, denied his request for a lawyer, and told him that he "must confess before he can leave all while [he] was handcuffed to a chair." (*Id.*). Relying on these allegations, Plaintiff again asserts that his conviction arose from "a void judgment on a[n] illegal contract." (*Id.* at 13).

Relatedly, Plaintiff alleges that he "alerted [Judge Branch] about the unlawfulness of his false arrest an[d] the conviction on record at the judicial hearing that occurred in Hamilton County justice center courtroom." (Doc. 1 at 16). Plaintiff asserts, however, that he "was ignored" and his motion for judicial release was "completely denied." (*Id.*). He further asserts that Judge Branch "was without right to continue the illegal proceeding due to the fact the trial court lacked subject-matter jurisdiction due to an improper bindover." (*Id.*). Plaintiff also says that Warden Luneke "unlawfully [held] plaintiff against his will for defendant Jennifer Branch." (*Id.* at 19).

Plaintiff's allegations related to his incarceration do not stop there. Plaintiff says that ODRC Director Chambers-Smith "refus[ed] to release plaintiff from unlawful custody after it been proven to be unlawful." (*Id.* at 21). And Ohio Attorney General Yost "had direct knowledge of [Plaintiff's] unlawful conviction but failed to help plaintiff instead he insisted on helping defendants by filing a motion to dismiss" in Civil Rights Case #2. (*Id.* at 23). Finally, Governor

12

DeWine "fail[ed] to release [him] from unlawful custody." (*Id.* at 26).

For these alleged wrongs, Plaintiff seeks injunctive relief in the form of release from prison and return of unspecified "real property," declaratory relief, and monetary damages. (Doc. 1 at 13, 21, 23, 25, 28).

### C.    Analysis

Liberally construed, *see Erickson*, 551 U.S. 94, and based on the above allegations, Plaintiff's Complaint raises six groups of claims:

1.    Defendant State of Ohio (a) was negligent in violation of state law (Doc. 1 at 12); (b) engaged in fraud in violation of state law (*id*. at 13); (c) kidnapped, abducted, and falsely imprisoned Plaintiff in violation of state law (*id*.); (d) took Plaintiff's "property . . . which resulted in defamation" presumably in violation of state law (*id*.); and (e) violated Plaintiff's rights under the First, Second, Fifth, Sixth, Eighth, and Fourteenth Amendments (*id*. at 15).

2.    Defendant Judge Branch (a) improperly denied his 2023 motion for judicial release in violation of the Fourteenth Amendment and state law; and (b) continued his false imprisonment in violation of the First, Second, Fifth, Sixth, Eighth, and Fourteenth Amendments and state law (*id*. at 16–18).

3.    Defendant Warden Luneke (a) falsely imprisoned Plaintiff in violation of state law (*id*. at 19); and (b) violated Plaintiff's rights under the First, Second, Fifth, Sixth, Eighth, and Fourteenth Amendments (*id*. at 20).

4.    Defendant ODRC Director Chambers-Smith (a) falsely imprisoned Plaintiff in violation of state law (*id*. at 21); and (b) violated Plaintiff's rights under the First, Second, Fifth, Sixth, Eighth, and Fourteenth Amendments (*id*. at 22).

13

5.      Defendant Ohio Attorney General Yost (a) falsely imprisoned Plaintiff in violation of state law (*id.* at 23); and (b) violated Plaintiff's rights under the First, Second, Fifth, Sixth, Eighth, and Fourteenth Amendments (*id*. at 24–25).

6.      Defendant Governor DeWine (a) engaged in tortious behavior and falsely imprisoned Plaintiff in violation of state law (*id.* at 26); and (b) violated Plaintiff's rights under the First, Second, Fifth, Sixth, Eighth, and Fourteenth Amendments (*id*. at 27).

In the end, Plaintiff's Complaint is subject to dismissal in its entirety.  28 U.S.C. §§ 1915(e)(2)(B); § 1915A(b).

> 1.      *Plaintiff's Federal Claims against Defendants State of Ohio, Warden Luneke, ODRC Director Chambers-Smith, Ohio Attorney General Yost, and Governor DeWine*

Although variously presented as violations of the First, Second, Fifth, Sixth, Eighth, and Fourteenth Amendments, and under 42 U.S.C. §§ 1981, 1982, 1983, and 1985, Plaintiff's federal claims against each of Defendants State of Ohio, Warden Luneke, ODRC Director Chambers-Smith, Ohio Attorney General Yost, and Governor DeWine are premised on his assertion that his 2015 conviction and sentence were unlawful and should be dismissed.  (*See* Doc. 1 at 13 ("[P]laintiff claims arise[] from a void judgment on an illegal contract.")).

As the Court explained in Civil Rights Case #1, (Doc. 54 at 17; Doc. 62 at 1–2), the United States Supreme Court held in *Heck v. Humphry*, 512 U.S. 477 (1994), that a civil action under 42 U.S.C. § 1983 cannot proceed if the action serves to undermine a criminal conviction not reversed on appeal or vacated by expungement or by writ of habeas corpus.  *Heck*, 512 U.S. at 486–87.  *See also Foster v. Lazalde*, No. EP18CV00049, 2018 WL 1251923, at *3 (W.D. Tex. Mar. 9, 2018) ("The rule in *Heck* is not limited to claims challenging the validity of criminal convictions.  Rather, it applies to many ancillary criminal rulings, because challenging these rulings would necessarily

14

imply the validity of a plaintiff's imprisonment.") (citing cases); *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) ("*Heck* therefore applies with respect not only to plaintiff's § 1983 claim but also to his §§ 1981, 1985(3) and 1986 claims.").

As before, Plaintiff has failed to demonstrate that his conviction and sentence have been reversed, expunged, or called into question. *See Heck*, 512 U.S. at 486–87. Accordingly, Plaintiff's federal claims against Defendants State of Ohio, Warden Luneke, ODRC Director Chambers-Smith, Ohio Attorney General Yost, and Governor DeWine are "duplicative [of the challenges he brought to his 2015 conviction and sentence in Civil Rights Case #1] and subject to dismissal as frivolous." *McElroy v. Ropos*, No. 1:23-cv-1715, 2023 WL 8236661, at *2 (N.D. Ohio Nov. 28, 2023). Though frivolousness forms the basis for the dismissal of these claims, the Undersigned separately notes that the State of Ohio is immune under the Eleventh Amendment, regardless of the nature of the relief sought. *Arbino v. Ohio*, No. 1:12 CV 0203, 2012 WL 1756856, at *2 (S.D. Ohio April 2, 2012). The exceptions to the Eleventh Amendment bar of suits in federal court against a state do not apply in this case. At bottom, the State of Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment rights. *See Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir. 1982); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673, 681 (6th Cir. 1976); *see also Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989).

Next, Plaintiff's claims under 42 U.S.C. § 1982, (*see* Doc. 1 at 12–13), are subject to dismissal for another reason. There are no factual allegations in the Complaint describing whether or how any of Defendants violated § 1982, which provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Plaintiff

merely demands in his requests for relief that Defendants "return [unspecified] real property." (*See* Doc. 1 at 13, 21, 23, 25, 28). Plaintiff's undeveloped and speculative § 1982 claim should therefore also be dismissed under *Iqbal*. *See Iqbal*, 556 U.S. at 678 (conclusory allegations are insufficient "to state a claim to relief that is plausible on its face").

Nor can Plaintiff state a claim against Defendant Yost for pleadings filed by an assistant attorney general in a separate civil-rights case. If Plaintiff disagrees with a motion by an opposing party, he should oppose it in accordance with the Federal Rules of Civil Procedure, not challenge the filing in a separate action. *Cf. Beckley v. City of Bos.*, No. 04-10909, 2005 WL 2149705, at *1 (D. Mass. Sept. 7, 2005) ("[I]f plaintiff disagrees with a motion by defendant, he shall oppose it, instead of moving to strike it."). And though failure to state a claim forms the basis for this dismissal, Defendant Yost is also immune from liability for this claim. *See Childs v. State of Ohio*, 72 F.3d 129 (6th Cir. 1995) (citing *Ellison v. Stephens*, 581 F.2d 584, 585 (6th Cir. 1978)) ("Defendants . . . were properly dismissed because they enjoyed immunity from liability for their acts in defending the state against a claim under § 1983."). *See also McConnell v. King*, 42 F.3d 471, 472 (8th Cir. 1994) (citing *Murphy v. Morris*, 849 F.2d 1101, 1105 (8th Cir. 1988)) ("The assistant attorneys general were absolutely immune from claims related to their advocacy functions in defending state officers in civil rights suits.").

Accordingly, Plaintiff's federal claims against Defendants State of Ohio, Warden Luneke, ODRC Director Chambers-Smith, Ohio Attorney General Yost, and Governor DeWine are subject to dismissal for failing to state a claim and for frivolousness.

### 2. Plaintiff's Federal Claims against Defendant Branch

As set forth above, Plaintiff sues Defendant Judge Branch for denying his 2023 motion for judicial release. Previously, the Court held that Judge Branch is entitled to judicial immunity from

Plaintiff's claims. (*See* Civil Rights Case #1, Doc. 54 at 14; Doc. 62 at 1–2). This Court also held that Plaintiff's challenge to the denial of his motion for judicial release fails to state a constitutional claim for relief because there is no constitutional right to early release from prison. (*See id.*, Doc. 54 at 17) (citing *McQuistan v. Sheldon*, No. 1:20-CV-00656, 2023 WL 2634128, at *25 (N.D. Ohio Feb. 10, 2023), *report and recommendation adopted*, No. 1:20-CV-00656, 2023 WL 2633534 (N.D. Ohio Mar. 24, 2023)). Because Plaintiff seemingly alleges the same here, these claims should be dismissed as frivolous and malicious. *See Miller v. Gregg*, No. 2:23-CV-169, 2023 WL 6119073 (W.D. Mich. Sept. 19, 2023) ("[C]ourts have held that an *in forma pauperis* complaint that merely repeats pending or previously litigated claims may be dismissed under 28 U.S.C. § 1915(e)(2)(i) as frivolous or malicious.") (collecting cases).

### 3. *Plaintiff's State Claims Against all Defendants*

Finally, Plaintiff's state law claims should also be dismissed for frivolity and failure to state a claim.

To begin, to the extent Plaintiff alleges any Defendant is liable for kidnapping, abduction, unlawful restraint, theft, aggravated trespass, or criminal trespass, (*see, e.g.*, Doc. 1 at 27 (citing Ohio Revised Code §§ 2905.01, 2905.02, 2905.03, and 2911.21)), Plaintiff, as a private citizen, is not permitted to sue under a criminal statute. *See Kelly v. City of New Phila.*, No. 5:11CV474, 2011 WL 3705151, at *2–3 (N.D. Ohio Aug. 22, 2011) (quoting *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003)) ("The district court properly dismissed [plaintiff's] claim pursuant to [two criminal statutes] because [he] has no private right of action under either of these criminal statutes."). And "[w]here a plaintiff has no private right of action, a plaintiff has not stated a claim upon which relief can be granted." *Flood v. Reed*, No. 2:16-CV-778, 2017 WL 1021364, at *3–4 (S.D. Ohio Mar. 16, 2017) (citing *Kafele v. Frank & Woolridge Co.*, 108 F. App'x. 307, 308–09

(6th Cir. 2004)).

Plaintiff also alleges that all Defendants either falsely imprisoned him or "continued" a false imprisonment. Viewing Plaintiff's complaint as a whole, it is obvious that these allegations are just another way to attack his original sentence and the denial of judicial release. (*See, e.g.*, Doc. 1 at 17 (alleging Defendant the State of Ohio wrongly has confined him for ten years because, in Plaintiff's opinion, his judgment should be voided)). A civil lawsuit is not the proper vehicle for that challenge, so these claims should be dismissed as frivolous and malicious. *Heck*, 512 U.S. 477, 486 (1994) (discussing the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments . . . ."); (*see also* Civil Rights Case #1, Doc. 54 at 17 (noting Plaintiff's similar Section 1983 claim is barred by *Heck*)).

Finally, as to Plaintiff's claims of fraud, defamation, or negligence against the State of Ohio, (Doc. 1 at 13), Plaintiff's allegations fail to provide the factual specificity required to state a claim. (*See, e.g.*, *id.* (alleging only that an "illegal contract" with the State of Ohio was "done through extrinsic fraud" and that "fraudulent representation[s]" were made at his judicial release proceedings concerning his initial criminal case) (alleging only that the State of Ohio's actions "resulted in defamation")); *see Iqbal*, 556 U.S. at 678 (conclusory allegations are insufficient "to state a claim to relief that is plausible on its face"). *See also AAA Installers v. Sears Holdings Corp.*, 764 F. Supp. 2d 931, 939 (S.D. Ohio 2011) (listing the six elements of fraud in Ohio and noting that an allegation of fraud must "state the specific circumstances surrounding the alleged fraud with particularity" (citation omitted)); *Gosden v. Louis*, 687 N.E.2d 481, 488 (Ohio Ct. App. 1996) (listing the five elements of defamation). Though Plaintiff attempts to list the elements of "actionable negligence," (Doc. 1 at 14), it is wholly unclear how the State of Ohio was meant to be negligent. (*Id.* at 14–15 (merely citing to his previous case as a whole and discussing his judicial

18

release hearing); *see also id.* at 12–13 (only discussing negligent acts in the context of jurisdiction)).  In this, too, Plaintiff has failed to state a claim upon which relief may be granted.

All told, Plaintiff's state claims against all Defendants should be subject to dismissal for failing to state a claim and for frivolousness.

## II.    REMAINING MOTIONS

Lastly, the Undersigned turns to Plaintiff's other motions, beginning with Plaintiff's motions for recusal (Docs. 7, 9, 10).  Judges are bound by the recusal standard set forth in 28 U.S.C. § 455(a), which provides that any United States judge "shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." *Ragozzine v. Youngstown State Univ.*, 783 F.3d 1077, 1079 (6th Cir. 2015) (quoting 28 U.S.C. § 455(a)).  Section 455(a) requires a judge to recuse herself "if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *Id.* (quoting *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990)) (discussing 28 U.S.C. § 455(a)).  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Burley v. Gagacki*, 834 F.3d 606, 617 (6th Cir. 2016) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).  Here, Plaintiff has made no allegations that indicate that the District Judge's or the Undersigned's impartiality might reasonably be questioned in this case.  Plaintiff has alleged no circumstances that create an appearance of bias.  Accordingly, disqualification is neither necessary nor appropriate.  Plaintiff's motions for recusal are **DENIED**.  (Docs. 7, 9, 10)

Next, the Court considers Plaintiff's motions for change of venue.  (Docs. 4, 8).  Although styled as motions for change of venue, the motions are, in effect, additional motions for recusal. As set forth above, recusal is inappropriate.  Further, Plaintiff has offered no basis for transferring

this case, which is subject to dismissal, to another court.  Plaintiff's motions for change of venue are **DENIED**.  (Docs. 4, 8)

Plaintiff also filed a motion for a certificate of appealability.  (Doc. 14).  As provided in 28 U.S.C. § 2253, unless a judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or the final order in a proceeding under section 2255."  *See also* Fed. R. App. P. 22(b).  But this is not a habeas action.  (*See* Doc. 1 at 3 (indicating Plaintiff brings this action under Section 1983)).  So, Plaintiff does not need a certificate of appealability before appealing the dismissal of this action.  *See, e.g.*, *Johnson v. CCA-Ne. Ohio Corr. Ctr. Warden*, 21 F. App'x 330, 332 (6th Cir. 2001) ("Since this case is properly construed as brought under § 1983, and not under § 2254, [plaintiff] does not require a certificate of appealability.");  *McGore v. U.S. Dist. Ct. Judges*, No. 24-CV-11510, 2024 WL 4728903, at *1 (E.D. Mich. Oct. 9, 2024).  Accordingly, Plaintiff's motion (Doc. 14) is **DENIED as moot.**

To end, the Undersigned **WARNS** Plaintiff that should he continue to file repetitive and frivolous lawsuits, the Court may place additional filing restrictions upon him or even declare him a vexatious litigator.

### IT IS THEREFORE RECOMMENDED THAT:

1.      The Court **DISMISS** Plaintiff's claims against Defendants **WITH PREJUDICE**. 28 U.S.C. §§ 1915(e)(2)(B); § 1915A(b).

2.      The Court **RECOMMEND** that this dismissal count as a strike under 28 U.S.C. § 1915(g).

3.      The Court certify pursuant to 28 U.S.C. § 1915(e)(2)(B) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

### IT IS THEREFORE ORDERED THAT:

1.      Plaintiff's motions for recusal (Docs. 7, 9, 10) are **DENIED**.

2.      Plaintiff's motions for change of venue (Docs. 4, 8) are **DENIED**.

3.      Plaintiff's motion for a certificate of appealability (Doc. 14) is **DENIED as moot**.

4.      The **CLERK OF COURT** update the docket in this case to include the State of Ohio as a named Defendant.

### IT IS SO ORDERED.

Date: April 3, 2025                     /s/Kimberly A. Jolson
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE

### PROCEDURE ON OBJECTIONS:

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).